UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN J. GERNETH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:16-cv-11082-DJC |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, |
| CHIASMA, INC., et al., | ) ) | PAYMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFF |
| Defendants. | ) ) ) | AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   ARGUMENT ...........................................................................................................3

    A.    Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund ..............................................................................................3

    B.    The Court Should Award Attorneys' Fees Using the Percentage-of-the Fund Method ................................................................................................4

    C.    Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable ....................................................5

        1.    The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee ..........6

        2.    The Skill and Experience of Counsel Support the Requested Fee..............7

        3.    The Complexity and Duration of the Litigation Support the Requested Fee ................................................................................8

        4.    The Risk of Non-Payment Was Extremely High in This Case .................10

        5.    The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee ........................................................11

        6.    Awards in Similar Cases Support the Requested Fee ...............................11

        7.    Public Policy Considerations Support the Requested Fee ........................12

        8.    The Endorsement of Lead Plaintiff and the Reaction of the Class Support the Requested Fee ....................................................12

    D.    The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained ...........................................................................13

    E.    The Award to Lead Plaintiff Pursuant to §77z-1(a)(4) of the PSLRA Is Reasonable ..........................................................................................14

III.   CONCLUSION.......................................................................................................16

Cases\4837-1426-1911.v1-5/22/19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahearn v. Credit Suisse First Boston LLC*,
No. 03-CV-10956 (JLT), slip op. (D. Mass. June 7, 2006) ....................................................15

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-CV-118 (VM), 2012 WL 1981505
(S.D.N.Y. June 1, 2012).........................................................................................................14

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985).............................................................................................................3, 12

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ...................................................................................7, 13

*Blum v. Stenson*,
465 U.S. 886 (1984)...................................................................................................................4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................................3

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
(S.D.N.Y. May 9, 2014)............................................................................................................8

*Courtney v. Avid Tech., Inc.*,
No. 1:13-cv-10686-WGY, 2015 U.S. Dist. LEXIS 67952
(D. Mass. May 1, 2015) ............................................................................................................5

*Crandall v. PTC Inc.*,
No. 16-cv-10471-WGY, 2017 U.S. Dist. LEXIS 217581
(D. Mass. July 14, 2017)...........................................................................................................5

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) .......................................................................................4, 6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...................................................................................................................6

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ..........................................................................................................4

- ii -

**Page**

*Hill v. State St. Corp.*,
  No. 09-12146-GAO, 2015 WL 127728
  (D. Mass. Jan. 8, 2015) ............................................................................ *passim*

*In re AVEO Pharm., Inc. Sec. Litig.*,
  No. 1:13-cv-11157-DJC, slip op.
  (D. Mass. May 30, 2018) .........................................................................5

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005).....................................................................4

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  No. 08-11064-NMG, 2012 WL 6184269
  (D. Mass. Dec. 10, 2012) ........................................................................14

*In re Fidelity/Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999)....................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
  (S.D.N.Y. Nov. 8, 2010) ..........................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................14

*In re Puerto Rican Cabotage Antitrust Litig.*,
  815 F. Supp. 2d 448 (D.P.R. 2011).........................................................6

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005).............................................................5, 11

*In re Thirteen Appeals Arising Out of San Juan
  Dupont Plaza Hotel Fire Litig.*,
  56 F. 3d 295 (1st Cir. 1995) ................................................................3, 4

*In re TJX Cos. Retail Sec. Breach Litig.*,
  584 F. Supp. 2d 395 (D. Mass. 2008) .....................................................6

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007).....................................................3, 12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005).....................................................8

**Page**

*Medoff v. CVS Caremark Corp.*,
    No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135
    (D.R.I. Feb. 17, 2016) ................................................................................ *passim*

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275
    (C.D. Cal. July 9, 2013) ...................................................................................8

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987
    (D. Mass. Sept. 30, 2016) ...............................................................................5

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312
    (D. Mass. Sept. 30, 2016) .............................................................................10

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 WL 3148350
    (N.D. Tex. Nov. 8, 2005) .................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................4

*Zametkin v. Fidelity Mgmt. & Research Co.*,
    No. 1:08-cv-10960-MLW, slip op.
    (D. Mass. May 11, 2012) ...........................................................................5, 15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77z-1(a)(4) ......................................................................................1, 3, 12, 14
    §77z-1(a)(6) ......................................................................................................4

Federal Rules of Civil Procedure
    Rule 23(h) .........................................................................................................1
    Rule 54(d)(2).....................................................................................................1

**SECONDARY AUTHORITIES**

H.R. Conf. Reg. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 .............................................................15

Cases\4837-1426-1911.v1-5/22/19

**Page**

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action*
   *Litigation: 2018 Full-Year Review*
   (NERA Jan. 29, 2019)...........................................................................................................7

Court-appointed Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Johnson Fistel, LLP ("Johnson Fistel") (collectively, "Lead Counsel"), respectfully submit this memorandum of law in support of their application, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for (i) an award of attorneys' fees of 30% of the $18,750,000.00 Settlement Amount; (ii) an award of $133,501.54 for litigation expenses incurred in prosecuting this action; and (iii) payment of $10,000.00 to Lead Plaintiff Laurent E. Sberro ("Lead Plaintiff") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.   PRELIMINARY STATEMENT

Lead Counsel negotiated this $18,750,000.00 settlement with Defendants, which will be distributed to eligible Class Members after deduction of Court-approved fees and expenses. This substantial and certain recovery obtained for the Class was achieved through the efforts, skill, experience, and effective advocacy of Lead Counsel over the last nearly three years. As explained in contemporaneously filed submissions,[2] the efforts of counsel included:

- Conducting a comprehensive investigation of the events underlying the claims alleged in the Litigation, including, *inter alia*, a review of publicly available information regarding the Defendants;

- Researching the applicable law with respect to Lead Plaintiff's claims and Defendants' anticipated defenses;

---

[1]   This motion is also made on behalf of Liaison Counsel Hutchings Barsamian Mandelcorn, LLP ("Hutchings Barsamian").

[2]   Submitted herewith in support of approval of the proposed Settlement are: (i) the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class for Settlement Purposes ("Final Approval Brief"); and (ii) the Declaration of Ryan A. Llorens and Michael I. Fistel, Jr. in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement, Approval of the Plan of Allocation, and Final Certification of the Class for Settlement Purposes; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Expenses, and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Joint Decl."), along with its exhibits thereto. Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement dated February 27, 2019 (the "Stipulation") (ECF No. 197) or in the Joint Decl.

- Drafting complaints for violations of the federal securities laws;

- Opposing Defendants' motion to dismiss;

- Requesting, negotiating for and reviewing hundreds of thousands of pages of non-public documents, responding to Defendants' discovery requests and litigating motions to compel discovery;

- Consulting with industry and damages consultants;

- Preparing a detailed mediation statement, participating in a formal arm's-length mediation process before a highly experienced mediator, Gregory Lindstrom, and providing supplemental materials to the mediator; and

- Negotiating and documenting the Settlement.

Joint Decl., ¶94.

Lead Plaintiff's Counsel's efforts to date have been without compensation of any kind for their successful prosecution of this case, which required them to devote over 6,200 hours of billable time through April 30, 2019, and risk more than $133,000 in litigation expenses. The recovery of any fees or expenses has been wholly contingent upon the result achieved. Thus, in accordance with fees awarded in similar actions in this Circuit and throughout the country, Lead Counsel seek a percentage fee of 30% of the Settlement Fund (or $5,625,000.00). As discussed herein and in the Joint Decl., the method of compensating counsel and the amount requested are justified in light of the substantial time and labor expended by Lead Counsel; the substantial recovery obtained for the Class; the quality of Lead Counsel's representation; the significant risks presented in the prosecution and settlement of this securities class action under the PSLRA on a contingent basis; the magnitude and complexity of the Litigation; and the professional standing of both Lead Counsel and Defendants' Counsel.

Counsel also seek payment of $133,501.54 in expenses incurred in prosecuting the action. As discussed herein, the expenses requested are reasonable in amount and were necessarily incurred

for the successful litigation of the case.  Finally, Lead Plaintiff seeks $10,000.00 pursuant to 15

U.S.C. §77z-1(a)(4) for his efforts representing the Class in the Litigation.  The modest award is

reasonable and should be awarded.

The requested amounts were disclosed in the Court-approved Notice that was provided to the

Class.  To date, no Class Member has objected to any of these requests.[3]

## II.    ARGUMENT

### A.    Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a

lawyer who recovers a common fund for the benefit of persons other than himself or his client is

entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980); *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel

Fire Litig.*, 56 F. 3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 265

(D.N.H. 2007).  Awards of reasonable attorneys' fees from a "common fund" provide compensation

that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this

one" and spread the costs of the litigation "proportionately among those benefitted by the suit."

*Tyco*, 535 F. Supp. 2d at 265.

The Supreme Court also has emphasized that private securities actions, such as the instant

action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought

by the U.S. Securities & Exchange Commission ("SEC").  *See Tellabs, Inc. v. Makor Issues &

Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472

U.S. 299, 310 (1985) (noting private securities actions "provide a most effective weapon in the

---

[3]    The objection deadline is June 6, 2019.  If any timely objections are received, Lead Counsel will address them in a reply memorandum due no later than June 20, 2019.

Cases\4837-1426-1911.v1-5/22/19

enforcement of the securities laws and are a necessary supplement to [SEC] action").[4] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential: "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Accordingly, Lead Counsel are entitled to an award of attorneys' fees from the Settlement Fund.

**B.      The Court Should Award Attorneys' Fees Using the Percentage-of-the Fund Method**

The Supreme Court has endorsed the percentage method, stating that "under the common fund doctrine. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The First Circuit also has endorsed this method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308. Indeed, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] . . . is 'less burdensome to administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'" *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting method "directly aligns the interests of the class and its counsel").[5] For these reasons, courts assessing fee awards in

---

[4]     Internal citations are omitted, and emphasis is added throughout, unless otherwise indicated.

[5]     The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §77z-1(a)(6). Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).

securities fraud class actions generally apply the percentage method, with or without consideration of lodestar as a "cross-check." *See, e.g.*, *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (noting that lodestar cross-check is sometimes used but would not be "particularly helpful or appropriate" to assess fees in that securities fraud action).

The requested fee of 30% is both reasonable under the circumstances and well within the typical range of percentage fees awarded in the First Circuit. *See, e.g.*, *In re AVEO Pharm., Inc. Sec. Litig.*, No. 1:13-cv-11157-DJC, slip op. at 7 (D. Mass. May 30, 2018) (awarding 30% of $15 million settlement, plus expenses); *Crandall v. PTC Inc.*, No. 16-cv-10471-WGY, 2017 U.S. Dist. LEXIS 217581, at *16 (D. Mass. July 14, 2017) (awarding 33-1/3%); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *45 (D. Mass. Sept. 30, 2016) (awarding 33-1/3%); *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *29 (D.R.I. Feb. 17, 2016) (addressing fee award and stating "30% is not out of proportion . . . in large class action litigations"); *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, 2015 U.S. Dist. LEXIS 67952, at *3 (D. Mass. May 1, 2015) (awarding 30%); *Zametkin v. Fidelity Mgmt. & Research Co.*, No. 1:08-cv-10960-MLW, slip op. at 6 (D. Mass. May 11, 2012) (awarding 30%).

## C.   Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005), courts in this Circuit consider several factors when considering an award of attorneys' fees, including:

> "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any."

Cases\4837-1426-1911.v1-5/22/19

*Hill*, 2015 WL 127728, at \*17 (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *CVS*, 2016 U.S. Dist. LEXIS 19135, at \*26-\*27 (same).  Courts also have considered whether lead plaintiffs support the requested fee and the reaction of the class.  *See Hill*, 2015 WL 127728, at \*19-\*20; *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of the relevant factors).  As set forth below, all of these factors weigh strongly in favor of finding that the requested fee award of 30% of the common fund is reasonable.

### 1.    The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee

Courts consistently have recognized that the result achieved is one of the most important factors to be considered in making a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award.").  The Settlement Fund of $18,750,000.00 has been obtained through the diligent efforts of Lead Counsel without the necessity and risk of prolonged litigation, trial, and appeals, and without the assistance of any governmental investigation.

Indeed, one of the distinct advantages of the percentage-of-the-fund method is that it directly incorporates the value of the recovery obtained into the calculation of the fee.  *See Duhaime*, 989 F. Supp. at 377 (noting advantage of percentage method is that "it focuses on result, rather than process, which better approximates the workings of the marketplace" and "the greater the value secured for the class, the greater the fee earned by class counsel").  Furthermore, as explained in the Final Approval Brief and the Joint Decl., the favorable nature of this Settlement is supported by

recent empirical evidence regarding securities class action settlements.  Between 1996 and 2018, the median recovery in securities cases with estimated damages of between $50 million and $99 million was 4.7%.[6]  Measured against that yardstick, the Settlement, if approved, will compensate the Class for approximately 20% of its maximum estimated damages – a substantial recovery in light of the Defendants' countervailing legal arguments.  Joint Decl., ¶¶81-82.  *See also CVS*, 2016 U.S. Dist. LEXIS 19135, at *18 (finding that settlement amounting to 5.33% of estimated recoverable damages was "well above the median percentage of settlement recoveries in comparable securities class action cases").  Here, the Settlement is all cash, not dependent upon the number of claims made, there is no reversion to Defendants, and hundreds – if not thousands – of members of the Class will now receive compensation that was otherwise uncertain when the case began.

2.      **The Skill and Experience of Counsel Support the Requested Fee**

The prosecution and management of a complex national securities class action requires unique legal skills and abilities.  As demonstrated by their firm résumés, Robbins Geller and Johnson Fistel are experienced and skilled practitioners in the securities class action field, and have long and successful track records in such cases.  Their willingness and ability to undertake complex and difficult cases such as this and their commitment to the Litigation added valuable leverage to the settlement negotiations.  *See Hill*, 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

---

[6]      *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, at 35 (NERA Jan. 29, 2019) ("NERA Study") (attached as Ex. 1 to Joint Decl.).

The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, Defendants have been represented by highly experienced lawyers throughout the Litigation from Ropes & Gray, LLP (through the motion to dismiss stage of the Litigation), Goodwin Procter LLP, Shearman & Sterling LLP and Foley Hoag LLP, all well-respected law firms known for their vigorous defense in cases such as this.

Notwithstanding this formidable opposition, Lead Counsel developed a case that was sufficiently strong to persuade Defendants to settle the action on terms highly favorable to the Class. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

### 3. The Complexity and Duration of the Litigation Support the Requested Fee

Courts have long recognized that securities class actions are notoriously complex and difficult to prove, and this case was no exception. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (recognizing securities class litigation is "notably difficult and notoriously uncertain"); *City of*

- 8 -

*Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

Many complex issues were raised in the Litigation.  Among other things, Lead Counsel needed to develop an understanding of the new drug approval process and other Food and Drug Administration ("FDA") procedures.  A comprehensive factual investigation was undertaken by Lead Counsel who drafted a detailed Complaint with the assistance of a consultant knowledgeable about the FDA approval process.  Once the PSLRA-mandated discovery stay was lifted following resolution of the motion to dismiss, Lead Counsel propounded targeted discovery to Defendants, and in connection with the mediation, drafted a mediation statement that set out Lead Plaintiff's strongest evidence based on documents produced by Defendants at that time.  Defendants likewise made compelling arguments in connection with their motion to dismiss (some of which were accepted by the Court) and the mediation that there were no material omissions or misrepresentations in the Registration Statement regarding the prospects for approval of the NDA for Mycapssa or the Phase 3 clinical trial; that the Registration Statement accurately described F. Hoffman-La Roche Ltd. and Hoffman-La Roche Inc.'s termination with Chiasma; that the claims against certain defendants were time-barred, and that those defendants with a due diligence defense had made a reasonable investigation into the truthfulness and completeness of the Registration Statement and had reasonable grounds to believe that the statements therein were accurate and complete.  *See* Joint Decl., ¶71.  These and other matters required substantial attention by Lead Counsel, who needed to analyze the factual record and relevant law carefully.

Accordingly, the magnitude and complexity of this Litigation support the conclusion that the requested fee is fair and reasonable.

### 4.     The Risk of Non-Payment Was Extremely High in This Case

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, Lead Counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS*, 2016 U.S. Dist. LEXIS 19135, at *28.

As noted in the Joint Decl., *see* ¶¶28-32, from the outset of this case in 2016 it was apparent that Lead Counsel faced very significant challenges to establishing liability and damages. Thus, there was a significant risk that the case could be litigated for many years but result in no recovery for the Class and no payment for counsel.  Specifically, Lead Counsel faced substantial risks and uncertainties in, among other things, proving that Defendants' alleged misstatements were materially false and misleading as required by the federal securities laws.  There is also a risk that Defendants could establish that the stock decline was caused by something other than the alleged false and misleading statements and omissions.  Lead Counsel also faced the risk that the Class would not be certified.  And, in the absence of a settlement, the Class faced a substantial litigation risk with no guarantee of a greater recovery.  Despite these very real risks, Lead Counsel worked vigorously to achieve a significant result for the Class.  Under these circumstances, the requested fee is fully appropriate.

### 5.     The Amount of Time Devoted to the Litigation by Lead Counsel Supports the Requested Fee

The extensive time and effort expended by Lead Counsel in prosecuting the Litigation and achieving the Settlement over the last nearly three years also establish that the requested fee is justified and reasonable.  *See Hill*, 2015 WL 127728, at *19.  The Joint Decl. details the substantial efforts of Lead Counsel in prosecuting Lead Plaintiff's claims.  While a lodestar cross-check is not required, *see Hill*, 2015 WL 127728, at *17, courts considering lodestar frequently note that lodestar multiples of 1.0 to 4.0 are generally considered appropriate.  *See, e.g.*, *Relafen*, 231 F.R.D. at 82 (approving settlement with 2.02 lodestar multiple).  Here, Lead Plaintiff's Counsel devoted more than 6,200 hours to the prosecution of this action.[7]  The substantial time and effort devoted to this case, and Lead Counsel's efficient and effective management of the Litigation, was critical in obtaining the favorable result achieved by the Settlement, and confirms that the fee request here is reasonable.

### 6.     Awards in Similar Cases Support the Requested Fee

As discussed above, Lead Counsel's requested fee of 30% of the Settlement Fund is well within the range of fee awards in class action cases in this Circuit and elsewhere.  *See* Joint Decl., Ex. 2; *see also CVS*, 2016 U.S. Dist. LEXIS 19135, at *28-*29 ("30% is not out of proportion with recovery percentages in large class action litigations").  Thus, this factor strongly supports the reasonableness of the requested fee.

---

[7]    Moreover, the legal work on this action will not end with the Court's approval of the proposed Settlement.  Additional hours and resources already have been, and necessarily will continue to be, expended assisting members of the Class with their Proof of Claim and Release forms, overseeing the claims process, and responding to Class Member inquiries.

Cases\4837-1426-1911.v1-5/22/19

### 7.     Public Policy Considerations Support the Requested Fee

Public policy supports rewarding counsel for prosecuting securities class actions, especially where, as here, "counsel's dogged efforts – undertaken on a wholly contingent basis – result in satisfactory resolution for the class." *CVS*, 2016 U.S. Dist. LEXIS 19135, at *29 (quoting *Tyco*, 535 F. Supp. 2d at 270).  As the Supreme Court has emphasized, private securities actions such as this provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman*, 472 U.S. at 310.

### 8.     The Endorsement of Lead Plaintiff and the Reaction of the Class Support the Requested Fee

Lead Plaintiff was appointed pursuant to the relevant provisions of the PSLRA.  As set forth in Lead Plaintiff's declaration,[8] Mr. Sberro carefully oversaw the prosecution and resolution of this Litigation, and had a sound basis for assessing the reasonableness of the fee request.  Lead Plaintiff fully supports and approves that request.  *See* Sberro Decl., ¶9.

Furthermore, the reasonableness of the requested fee is supported by the reaction of the Class.  *See, e.g.*, *Hill*, 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.").  As of May 22, 2019, the Claims Administrator disseminated in excess of 13,600 Notice Packages.  *See* accompanying Declaration of Mishka Ferguson Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Ferguson Decl."), on behalf of the Court-appointed Claims Administrator for the Settlement, Gilardi & Co. LLC ("Gilardi"), ¶¶5-11.  To date, no Class

---

[8]     *See* Declaration of Laurent E. Sberro in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and for an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Sberro Decl."), submitted herewith.

Members have formally objected to any portion of the Settlement or Lead Counsel's requested fee.[9] Nor has any Class Member opted out of the Class, *see* Ferguson Decl., ¶15, which lends further support to the requested fee.  *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 351 (finding "overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).

In sum, Lead Counsel respectfully submit that the 30% fee is reasonable here, and should be awarded.

**D.      The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained**

Lead Counsel's fee application includes a request for payment of litigation expenses that were reasonable and necessary to the prosecution of the Litigation.  Attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *See, e.g.*, *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax.").  In the Notice, the Class was advised that Lead Counsel would ask the Court for an award of litigation expenses not to exceed $250,000.00.

Lead Counsel's expense request of $133,501.54 is reasonable and should be approved.  The individual declarations of Robbins Geller, Johnson Fistel, and Hutchings Barsamian, submitted herewith, provide itemized schedules of the expenses incurred by each firm.  The expenses listed on

---

[9]     Lead Counsel will address any fee-related objections that are received in their reply papers, to be filed with the Court on June 20, 2019.

those schedules are ones that are necessarily incurred in litigation and routinely charged to clients billed by the hour by each firm.

Lead Counsel respectfully submit that these modest expenses were reasonably and necessarily incurred in prosecuting this action and should be awarded from the Settlement Fund. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which the paying, arms' length market reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund."); *see also Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Here, Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type the paying, arms' length market reimburses attorneys. . . .  As such, these expenses shall be reimbursed."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting "travel, mediation fees, photocopying, . . . delivery and mail charges" are "routinely reimbursed").

**E.      The Award to Lead Plaintiff Pursuant to §77z-1(a)(4) of the PSLRA Is Reasonable**

The Class also was advised that Lead Plaintiff would ask the Court for an award not to exceed $10,000.00 in connection with his participation in the Litigation.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made "to any representative party serving on behalf of a class."  15 U.S.C. §77z-1(a)(4); *see also In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 08-11064-NMG, 2012 WL 6184269, at *2 (D. Mass. Dec. 10, 2012) (reimbursing lead plaintiffs a total of $54,626 when they had "worked closely with counsel throughout the case, communicated

- 14 -

with counsel on a regular basis, reviewed and provided input with respect to counsel's submissions, provided information, produced documents, and participated in settlement discussions"); *Zametkin*, slip op. at 6 (awarding $14,910 to lead plaintiff); *Ahearn v. Credit Suisse First Boston LLC*, No. 03-CV-10956 (JLT), slip op. at 5-6 (D. Mass. June 7, 2006) (awarding total of $35,000 in PSLRA expenses to two lead plaintiffs).   The reason behind permitting payment for services of a lead plaintiff was made clear in the congressional record:  "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Reg. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, at 731 (1995).

As set forth in his declaration, Lead Plaintiff has actively and effectively fulfilled his obligations as a representative of the Class, complying with the demands placed upon him, and providing valuable assistance to Lead Counsel.  Indeed, Lead Plaintiff was actively involved in this case from start to finish.  For example, Lead Plaintiff engaged in dozens of telephonic conferences and other correspondence with Lead Counsel, which allowed Lead Plaintiff to be kept fully informed regarding case status, including settlement-related discussions.  Sberro Decl., ¶3.  Lead Plaintiff also reviewed all of the pleadings, briefs, and orders in the Litigation.  *Id.*, ¶4.  These documents included: (a) the initial complaint filed in this Litigation; (b) briefing and submissions relating to Lead Plaintiff's motion for appointment as Lead Plaintiff in the Litigation, and the order appointing Lead Plaintiff in this Litigation; (c) the operative, amended Complaint; (d) briefing related to Defendants' motion to dismiss; (e) mediation submissions; (f) drafts of the Stipulation, and exhibits thereto; and (g) the order granting the motion for preliminary approval of the Settlement of the Litigation.  *Id.*  In connection with each of these documents, Lead Plaintiff communicated with Lead

Counsel regarding their potential impact on the Litigation. *Id.* Additionally, Lead Plaintiff reviewed Defendants' document requests and interrogatories propounded upon him, spent significant time with Lead Counsel to prepare responses thereto, and gathered and then produced documents in connection with Defendants' document requests. *Id.*, ¶5. Lead Plaintiff also reviewed and prepared a declaration and affidavit in connection with Defendants' motion to compel production of documents and consulted extensively with Lead Counsel in connection therewith. *Id.* Finally, Lead Plaintiff participated in discussions with Lead Counsel concerning negotiations with Defendants and the ultimate decision to settle this Litigation, which included his careful review (and subsequent approval) of the proposed Settlement. *Id.*, ¶¶3, 6, 7. These actions are precisely the type that support reimbursement to representative parties under the PSLRA.

Thus, in recognition of Lead Plaintiff's time and effort expended for the benefit of the Class, Lead Counsel respectfully request a compensatory award to Lead Plaintiff in the amount of $10,000.00, which represents his time spent in the prosecution of the Litigation (more than 100 hours) multiplied by an hourly rate of $100.00, a rate based on his annual income as an investor. *Id.*., ¶10. This amount is reasonable and fully justified under the PSLRA based on Lead Plaintiff's extensive involvement in the Litigation and the amount of time he devoted for the benefit of the Class. Therefore, Lead Counsel and Lead Plaintiff respectfully submit that this award should be granted.

## III.   CONCLUSION

For the reasons set forth above, Lead Counsel respectfully request that the Court enter an Order awarding them fees in the amount of 30% of the Settlement Fund, plus accrued interest; and $133,501.54 in litigation expenses, plus accrued interest. Lead Counsel further request that Lead Plaintiff be awarded $10,000.00 in connection with his representation of the Class.

- 16 -

DATED:  May 23, 2019            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
RYAN A. LLORENS
CHRISTOPHER D. STEWART


                  s/ Ellen Gusikoff Stewart
             ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ryanl@rgrdlaw.com
cstewart@rgrdlaw.com

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonfistel.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
WILLIAM W. STONE
MARY ELLEN CONNER
40 Powder Springs Street
Marietta, GA 30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com
williams@johnsonfistel.com
marvellenc@johnsonfistel.com

Lead Counsel for Lead Plaintiff


HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com


Liaison Counsel for Lead Plaintiff

- 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 23, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing (NEF) and papers copies will be sent to those indicated as non-registered participants on May 23, 2019.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  EllenG@rgrdlaw.com